HUGO DENNIS, JR., LORRAINE L. BERRY, WILLIAM S. HARVEY, EDGAR M. ILES, CLEONE CREQUE MAYNARD, ADELBERT M. BRYAN, LLOYD L. WILLIAMS, SIDNEY LEE, BENT LAWAETZ, Plaintiffs

v.

ELMO D. ROEBUCK, Defendant

Civil No. 83-206

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 19, 1983

GEORGE H. T. DUDLEY, ESQ. and MICHAEL C. MARDEN, ESQ. (c/o DUDLEY, DUDLEY & TOPPER), St. Thomas, V.I., *for plaintiffs*

RONALD T. MITCHELL, ESQ. (PALLME & MITCHELL), St. Thomas, V.I.,
  *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The question raised, and answered, in this opinion is whether seven months into its term, a newly formed majority of the Virgin Islands Legislature can replace the president and other officers of that body elected by another majority of the same Legislature at the time it organized for its two-year term.

A hearing was held on July 29, 1983, and the Court's Findings of Fact and Conclusions of Law were entered in favor of the plaintiffs on their request for a declaratory judgment, declaring that the reorganization of the Legislature by the plaintiffs was valid, and that Sen. Hugo Dennis, Jr., was the new, duly elected President of the Fifteenth Legislature of the Virgin Islands.

The Court reserved the right to file a written opinion to supplement the record, which is herewith presented.

## I. FINDINGS OF FACT

Certain facts were stipulated to by all the parties as forming the basis for the Conclusions of Law herein.

On January 10, 1983, the Fifteenth Legislature met for the first time to organize itself. A majority of the fifteen members approved Resolution No. 1087 as the Standing Rules of the Legislature. They provided for the election of a President as presiding officer by a majority vote of the total membership. On that same date, the members also adopted Resolution No. 1086, which designated Senator Elmo D. Roebuck as president of the Fifteenth Legislature. Certain other senators were elected as other officers and committee chairmen. Resolution No. 1086 was in conformity with the Standing Rules of the Legislature, particularly Rule 106.

On May 23, 1983, the Fifteenth Legislature adopted Resolution No. 1103. This added a sentence to Rule 613 of the Standing Rules of the Legislature, and required any amendment to a bill or a resolution to be "germane." What was, or was not, "germane," was not defined.

On July 18, 1983, nine of the fifteen senators filed a petition which directed that the Senate be convened on July 21, 1983, for consideration of Bill No. 15-0381, and any amendments thereto. Bill No. 15-0381 as originally filed was a measure honoring a prominent Virgin Islander, Bobby Richards, for his musical accomplishments.

219

The same nine senators who signed the petition also offered an amendment to Bill No. 15-0381. This amendment was the election of a new slate of officers, committee chairmen and committee members of the Fifteenth Legislature, replacing those designated on January 10, 1983, by Resolution No. 1086.

Thus was the stage set on July 21, 1983 when President Roebuck convened the Legislature. Twelve senators were in attendance, including all nine of those who had signed the petition and who offered the proposed amendment to Bill No. 15-0381. The amendment was offered as soon as the Legislature was called to order. President Roebuck then ruled, as a procedural matter, that (1) the amendment was not "germane" under Rule 613 of the Standing Rules, as amended and (2) the amendment, if voted upon, would require not less than ten votes. The Senate President expressed the view that since the amendment was, in effect, an amendment of the Standing Rules, it would require two-thirds of the total Senate membership, or ten senators, to vote for approval.

The nine senators were obviously disconcerted by this ruling of the chair, and it was promptly appealed. Nine senators voted to overturn the ruling of the chair, and the President then ruled that nine votes only having been cast in favor of the appeal of the chair's ruling, and ten votes being required, the amendment had failed.

President Roebuck then called for a roll call vote on the original Bill No. 15-0381 honoring Bobby Richards for his musical accomplishments. The result of this roll call vote was announced as three in favor, nine not voting, and three absent. President Roebuck then stated that there being no further business before the body, the legislative session was adjourned. With that, President Roebuck, and Senators Mapp and Brown, together with the chief counsel, chief recording secretary, the sergeant-at-arms and other employees of the Legislature left the Chamber floor.

While the events described in the above paragraph were taking place, the nine senators who had presented the petition and the amendment to Bill No. 15-0381, designated Senator Adelbert Bryan as "President Pro Tem" of the Fifteenth Legislature. Senator Bryan then sat in the chair of the president, which was no longer occupied by Senator Roebuck, and Senator Bryan then conducted a vote on the amendment as a "substitute" for the body of the original Bill No. 15-0381. The outcome of that vote was nine in favor and six absent. Senator Bryan declared the amendment adopted. He then put to the other eight senators in the Chamber at the time a vote on Bill No. 15-0381 as declared amended, and the outcome was announced as

nine in favor, six absent. Senator Bryan declared Bill No. 15-0381, as amended, adopted. He then relinquished the chair of the President, and it was then occupied by Senator Hugo Dennis, Jr. After brief remarks, Senator Dennis declared the activities at an end.

## II. ISSUES

The essential issue which is the pivot of this lawsuit is whether a group of senators who constitute a majority can reorganize the Fifteenth Legislature after it had already organized itself at the outset, thereby deposing and replacing the presiding officer and other officers; and committee chairmen. To resolve that issue, we must also resolve the issue of who determines what is "germane" in amendments to bills or resolutions, and, if indeed a new majority can reorganize the Legislature, must that majority consist of at least ten Senators, or a lesser number.

## III. DISCUSSION

We begin the discussion of the legal issues in this matter with Rule 106 of the Standing Rules of the Legislature. This rule provides for the election of the various officers, committee chairmen and members but it does not designate the terms of office of any of the persons to be elected. Senator Roebuck argues that it was the clear intent, however, that the persons so elected and designated serve during the entire session without change. Indeed, his position is supported by Resolution No. 1086, which designated those officers, chairmen and committee members on January 10, 1983, by majority vote. That resolution states that the persons elected shall serve "during the term of the Fifteenth Legislature of the Virgin Islands". Senator Roebuck, elected as president, was one of those persons covered by the resolution.

However, Rule 106 can also be read to argue that it was the intent of the rule that the majority of the senators should designate the persons to serve as officers, without reference to whether or not that majority would change its composition during the term of the Legislature.

■■ This court adopts the view that the persons who occupy the office of president and the other offices, occupy those particular positions during the term of the Fifteenth Legislature at the pleasure of the majority. In that respect, the Court is drawn to the key case cited repeatedly for that proposition, In Re Speakership of the House of Representatives, 25 P. 707, 708, (S.Ct. Colo. 1891). Most recently, this case was cited in Malone v. Meekins, 650 P.2d 351

(Alaska, 1982). In the Colorado case, the Supreme Court of Colorado said:

> From the foundation of representative government in this country, the general rule as announced by standard American authors on parliamentary law, has been that the legislative body of a state, having the power to choose its own speaker from its own members, has also the inherent power to remove such officer at its will or pleasure.

In Re Speakership, supra, also cites Thomas Jefferson's Manual for Parliamentary Practice for the same proposition.

Senator Roebuck does not say he cannot be removed, however. He argued that it takes ten persons, or two thirds of the total membership, to change the rules of the Legislature to remove the requirement of "germaneness" on any amendments, thus making it possible to remove him from office, by the mechanism of a nongermane amendment.

■ Indeed, Senator Roebuck is correct that any change in the Standing Rules of the Legislature requires the votes of two thirds of its entire membership. The plaintiffs argue, however, that having elected Senator Roebuck as their president by majority vote, it may in turn elect someone else by that same majority vote to replace him.

That is what happened in this case. A newly emergent majority, formed seven months after the Fifteenth Legislature had organized and begun its work, decided to change its leadership. They did this by attaching an amendment making those changes to a piece of legislation which honored a Virgin Islander for his musical accomplishments.[1]

When that was sought to be accomplished, the President of the Legislature rejected the attempt for two reasons: (1) that ten votes were necessary to accomplish the result sought, since a change in the rules as to "germaneness" of amendments was required; and (2) the amendment was not, in fact, germane, and thus could not be entertained.

The nine members who formed the newly emergent majority then appealed the ruling of the chair, but only nine votes having been cast in favor of overturning that ruling, and President Roebuck hav-

---

[1] The subsequent furor has, of course, made Mr. Bobby Richards even more famous, though the amendment served to remove the actual language which honored him in the first place.

ing required ten votes, the President then refused to permit any further action on the attempt to change leadership.

It is this Court's view, however, that we are not really dealing with a change in the Standing Rules of the Legislature, but rather with an interpretation of those rules. Accordingly, ten votes would not be necessary to accomplish the result sought. The amendment need not be discarded because of the President's view as to its "germaneness."

There is no specific authority that states who is to make the determination of whether an amendment is "germane". During his testimony, Senator Roebuck said he and he alone has the right to make that determination. However, this overlooks another of the Standing Rules of the Legislature, Rule 301(c), which provides that a procedural, or parliamentary ruling such as one involving whether an amendment is "germane" may be appealed and overturned by a majority vote of the members, a quorum being present.

Likewise, the Standing Rules of the Legislature, in the Preamble, provide that Robert's Rules of Order (Revised), will govern the actions of the Legislature in the absence of any specific rule covering a matter in question.

But whether under Rule 301(c) or Robert's Rules of Order, the appeal of the ruling of the chair should have been put to a vote, and nine persons voting to overturn that ruling would suffice to overrule the chair. For no matter how bizarre it may seem, it is for the majority of the Legislature itself to determine what is "germane," even though this will, on occasion, produce contradictory and confusing results. It has never been said that the exercise of democracy is always a tidy and clearcut affair.

■ The essence of this case is that the greater number of senators may, in fact, determine what is "germane" and what is not "germane" pursuant to the Standing Rules of the Legislature and the absence of any other mechanism for such a determination. Therefore, the President of the Legislature cannot avoid a vote on an amendment which a majority of his colleagues has determined is "germane," simply by leaving the floor or recessing the session, or by refusing to put the matter to a vote.

This Court's view is supported by ample precedent which flows from In Re Speakership, supra. The procedure adopted by the nine senators, leading to the eventual adoption of amended Bill 15-0381, was valid, and those officers, committee chairmen and committee members named therein are entitled to occupy their respective positions.

Plaintiffs also sought an injunction, prohibiting Senator Roebuck from interfering with their exercise of all the powers, duties and obligations of the offices they now occupy. However, this Court, like most of the Virgin Islands community, has a deep respect for Senator Elmo D. Roebuck rising from his twelve years of honorable service to this community. His career has been built upon respect for the rule of law, and this Court will not enter any injunction against him. Rather, we continue to place in him the trust that he will observe the rule of law in the future, as he has in the past.

Judgment will enter accordingly.