**VIRDIN C. BROWN, ADELBERT M. BRYAN, ALMANDO LIBURD, ELMO D. ROEBUCK, STEPHANIE SCOTT–WILLIAMS, ARTURO WATLINGTON, JR., and CELESTINO WHITE,**
**Plaintiffs/Appellees**

**v.**

**ALICIA HANSEN, LORRAINE L. BERRY, MALCOLM C. CAL-LENDER, BENT LAWAETZ, LILLIANA BELARDO de O'NEAL, HOLLAND L. REDFIELD, II, JOHN F. TUTEIN, ST. CLAIR N. WIL-LIAMS, ALEXANDER A. FARRELLY, and GOVERNMENT OF THE VIRGIN ISLANDS, Defendants/Appellants**

Dist. Ct. No. 92-35

Terr. Ct. No. 157/92

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 19, 1992

175

IVER A. STRIDIRON, ESQ., Charlotte Amalie, St. Thomas, V.I., *for appellees*

GEORGE H.T. DUDLEY, ESQ. (DUDLEY, TOPPER & FEUERZEIG), Charlotte Amalie, St. Thomas, V.I., *for appellants*

BROTMAN, *Actinq Chief Judge*

On Appeal from the
Territorial Court of the Virgin Islands

BEFORE: STANLEY S. BROTMAN, *Acting Chief Judge*, District Court of the Virgin Islands, Senior Judge of the United States District Court for the District of New Jersey, Sitting by Designation; EDWARD N. CAHN, *Judge* of the United States District Court for the Eastern District of Pennsylvania, Sitting by Designation; MARIA M. CABRET, *Judge* of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM

In proceedings conducted on January 22, 1992, the Virgin Islands Legislature passed four Bills, two of which were Resolutions relating to the internal organization and rules of the legislature.[1] The passage of the two Resolutions resulted in a reorganization and shift in leadership with respect to certain legislative standing committees. This case was brought by the President of the Senate and six other Senators seeking a declaration that the acts of the eight

---

[1] Present and voting affirmatively on these Bills were the eight appellant Senators. The appellee Senators were not in attendance.

majority Senators were illegal. Appellees' complaint alleged that the Bills were passed by a simple majority in violation of the rules of the Legislature, which required a two-third vote of the entire Senate for amendment of said rules. They moved for injunctive and declaratory relief, seeking to enjoin appellant Senators from taking any action in violation of the January 14, 1991 rules of the Legislature. Appellee Senators also sought a declaration that the four Bills were null and void.

The appellant Senators filed an answer and counterclaim seeking a declaration that the four Bills passed on January 22, 1992, were in compliance with the Revised Organic Act of the Virgin Islands. They also moved to dismiss appellee Senators' complaint for failure to state a claim and for summary judgment on their counterclaim.

By its Order dated February 24, 1992, the Territorial Court granted the appellee Senators' motion for injunctive relief, and denied appellant Senators' motions to dismiss and for summary judgment. On February 25, 1992, an amended judgment was entered pursuant to which the appellants were enjoined "from convening any sessions and passing any Bills or Resolutions that are not in conformance with the Rules and Regulations promulgated on January 14, 1991, by the Nineteenth Legislature" and Bill Nos. 19-2001, 19-2002, 19-2003, and 19-2004 (the Bills passed on January 22, 1992) were declared null and void.

An appeal was taken to this Court on an expedited basis. We hereby reverse the judgment of the Territorial Court.

## I. BACKGROUND

The Legislative branch of the Virgin Islands government consists of a unicameral legislature (the "Senate" or the "Legislature") composed of fifteen Senators. See 1 V.I. Code Ann., Revised Organic Act of 1954, § 5 (1967) (the "Revised Organic Act"). Senators are elected for two year terms. See Revised Organic Act § 6. On January 14, 1991, the Nineteenth Legislature of the Virgin Islands was convened. Among other actions, it adopted Standing Rules for the Nineteenth Legislature (the "Rules"), and decided upon committee assignments and chairmanships. These Resolutions[2] were adopted

---

[2] It appears that matters dealing with the internal workings of the Senate are dealt

by a vote of 11 to 4. See J.A. I at 139a.[3] The Rules of the Nineteenth Legislature required a two-thirds vote to amend the rules. See J.A. I at 27a. This provision comported with the rules adopted by previous sessions of the Legislature. J.A. I at 296a.[4]

By January of 1992, a majority of Senators had grown disenchanted with their elected leadership.[5] They also disapproved of the actions of the chairman of the Rules Committee. These eight Senators therefore petitioned the Senate President, Virdin Brown, to convene the Senate. The purpose of this session was to consider four Bills: 19-2001 (relating to the reorganization of committee and chairmanship assignments), 19-2002 (relating to the adoption of new Rules),[6] 19-2003 (relating to the transfer of monies from the budget of the Senate to certain Senior Citizens' programs), and 19-2004 (relating to the appropriation of monies for a stray animals program). See J.A. I at 329a.

Senator Brown called the requested meeting on January 22, 1992. After opening the meeting and reading the petition, Senator Brown stated that the Bills were not properly before the Senate (because of certain procedural defects in the manner in which they were introduced), and adjourned the meeting over the objections of a number of the Senators present. See J.A. I at 331a. Senator Brown and his supporters then left the Senate Chambers.

Following their exit, Senator Hansen (the Vice-President of the Senate) assumed the chair and continued the proceedings. See J.A. I at 339a. Senator Hansen then asked Senator Tutein to serve as acting secretary. See J.A. I at 140a. The four Bills in question were

---

with by resolution. A resolution need not be signed by the governor, see J.A. I at 75a. This contrasts with an act, which must be signed by the governor. See J.A. I at 74a–75a.

[3] Citations to the Joint Appendix are in the form J.A. (vol.) at (page).

[4] Donald Cole, the archivist of the Virgin Islands Legislature, states in his affidavit that the rules of almost every session have required a two-thirds vote to amend the rules. The two exceptions were the Eighteenth Legislature, which required a three-fifths vote to amend the rules, and possibly the Eleventh Legislature, for which no rules can be found. See J.A. I at 296a.

[5] Alicia Hansen, Lorraine Berry, Malcolm Callender, Bent Lawaetz, Lilliana Belardo de O'Neal, Holland Redfield, II, John Tutein, and St. Clair Williams.

[6] It appears that the primary change sought to be instituted by the new Rules is an increase in the power of the President and the Vice-president of the Senate, especially in regard to their power to control the day to day running of the Legislature. Specifically, the new Rules appear to give the President and Vice-president greater power to make unilateral staffing and budgetary decisions.

then adopted by roll call vote, with all eight Senators then present voting "yea." See J.A. I at 339a–344a; 358a–367a. Senator Hansen then transmitted these Bills to Governor Alexander Farrelly. See J.A. I at 141a. On February 7, 1992, Governor Farrelly signed Bill 19-2003 (relating to funding for senior citizen's programs) and vetoed Bill 19-2004 (relating to funding for stray animal programs). See J.A. I at 75a. After noting that Bills 19-2001 (relating to committee chairmanships and assignments) and 19-2002 (relating to the adoption of new Rules) were Resolutions not requiring his signature, he ordered them deposited in the Archives along with all other Resolutions. See J.A. I at 75a.

On February 12, 1992, the Senators who had not voted in favor of the Bills introduced at the January 22nd session[7] filed suit in the Territorial Court.[8] The Complaint contained a request for a Preliminary Injunction. The appellant Senators then filed a Motion to Dismiss as well as a Motion for Summary Judgment. Appellee Senators sought to have the Bills passed during the January 22nd meeting declared null and void, and to enjoin the Senate from operating under Rules or committee assignments other than those adopted by the Senate during its January 14, 1991 meeting.[9] The court below held hearings on these Motions on February 19, 1992, and on February 24, 1992, entered a Memorandum and Order enjoining the Senate from reorganizing or passing unlawful Bills. The Order also enjoined Governor Farrelly from signing unlawful Bills, and ordered him to return the Bills passed on January 22nd which the court declared null and void. See J.A. I at 309a–310a. On February 25, 1992, the Territorial Court Judge entered an amended judgment, which enjoined the legislature from operating under any rules except the old rules and again declared the Bills passed during the January 22nd meeting of the Senate null and void.

On appeal, the parties raise the following issues:

(1) Whether the Territorial Court erred as a matter of law in finding that appellees' complaint presented a justiciable issue capable of judicial Resolution.

---

[7] Senators Virdin Brown, Adelbert Bryan, Almando Liburd, Elmo Roebuck, Stephanie Scott-Williams, Arturo Watlington, Jr. and Celestino White.

[8] Docket number 157/1992.

[9] The appellee Senators also sued Governor Farrelly, alleging that he acted illegally when he took action on the bills passed during the January 22nd meeting.

179

(2) Whether the Territorial Court erred as a matter of law in finding that the actions taken at the January 22, 1992 session violated the Revised Organic Act.

## II. DISCUSSION

The issues presented in this case require the Court to first address the political question doctrine, which requires courts to refrain from deciding cases which would interfere with the internal workings of the other co-equal branches of government.[10] "The non-justiciability of a political question is primarily a function of the separation of powers." See Baker v. Carr, 369 U.S. 186, 210 (1962). See also Powell v. McCormack, 395 U.S. 486, 518 (1968). One of the primary purposes of our separation of powers system is "to safeguard the independence of each branch of the government and protect it from domination and interference by the others." Bradner v. Hammond, 553 P.2d 1, 6 n.1 (Alaska 1976). Appellants assert that the issues before us are non-justiciable. We agree.

A. *The Political Question Doctrine*

The threshold issue before the Court is whether or not the doctrine of separation of powers prevents this Court from investigating possible violations of legislative rules. Courts have repeatedly noted that the role of the judiciary in reviewing the activity of the legislature is limited to a determination that the actions of the legislature do not violate any constitutional provision. See Schwab v. Ariyoshi, 564 P.2d 135, 142 (Haw. 1977) (courts will not interfere with the conduct of legislative affairs in absence of a constitutional mandate to do so, or unless the procedure or result constitutes a deprivation of constitutionally guaranteed rights). Generally, courts will set aside legislative action only where it violates some procedural requirement imposed by a state constitution, state statute, or some other external source of law. See State v. Sitka, 527 A.2d 265, 267 (Conn. App. Ct. 1987) (courts cannot pass on the regularity of legislative proceedings except where a constitutional violation is present).

---

[10] It must be stated at the outset that the political question doctrine does not deprive courts of jurisdiction over a case. See Powell v. McCormack, 395 U.S. 486, 512–13 (1968). Instead, the political question doctrine, if applicable, deprives the court of its ability to grant relief.

## B. *Defining A "Political Question"*

The Supreme Court in Baker v. Carr articulated the standards for evaluating whether a case presents a political question, and is, therefore, non-justiciable:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion; or the impossibility of a court's undertaking independent Resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker v. Carr, 369 U.S. at 217.

Applying the foregoing standard, it is apparent that this case should be dismissed as a non-justiciable political question.

The first test enunciated in Baker v. Carr, whether there is a "textually demonstrable constitutional commitment" of this issue to the Legislature of the Virgin Islands, suggests that the question here is a political one. Section 6(g) of the Revised Organic Act reads:

> [t]he legislature shall be the sole judge of the elections and qualifications of its members, shall have and exercise all the authority and attributes inherent in legislative assemblies, and shall have the power to institute and conduct investigations, issue subpoena to witnesses and other parties concerned, and administer oaths. The rules of the Legislative Assembly of the Virgin Islands existing on the date of approval of this Act shall continue in force and effect for sessions of the legislature, except as inconsistent with this Act, *until altered, amended or repealed by the legislature.* . . . (Emphasis added)

■ Section 6(g) of the Revised Organic Act provides an express grant of rule-making authority. It vests in the Legislature of the Virgin Islands "all the authorities and attributes, inherent in legislative assemblies. . . ." The authority to declare its own rules is within the sole province of the Legislature. Thus, under the first

prong of the Baker v. Carr test, it is clear that pursuant to Section 6(g) of the Revised Organic Act the authority to devise internal rules of proceedings has been committed to the Legislature.

Another prong of the Baker v. Carr test implicated in this case is the element of due respect which the judiciary owes to the independent and co-equal legislative branch of government. Involvement by the courts in the internal matters of the legislature demonstrates a lack of respect for a co-equal branch of government. Other courts confronted with similar claims of rule violations by legislatures have refused to declare action taken by those legislatures invalid. See Malone v. Meekins, 650 P.2d 351 (Ala. 1982).[11]

█ In the instant case, the same conclusion is warranted. Here, the Legislature's actions were within the realm of constitutionally permissible conduct. Therefore, it is not for this Court to determine whether action by a majority of duly elected legislators violated their own internal procedural rules. See Board of Education v. City of New York, 362 N.E.2d 948, 953 (N.Y. 1977) ("subject to some

---

[11] In Malone v. Meekins, 650 P.2d 351 (Ala. 1982), the Alaska Supreme Court was asked to decide whether a faction of the Alaska House of Representatives had violated its internal procedural rules when it ousted and replaced its Speaker of the House.

The Alaska Supreme Court refused to declare the action invalid. The court found the issue of the validity of the election of the Speaker to be a non-justiciable political question:

For the courts to assume responsibility for overseeing the officer selection process of a legislative body would be highly intrusive and, . . . inconsistent with the respect owed the legislature by the judiciary.

Malone, 650 P.2d at 357.

The Alaska Supreme Court went on to note that even if the legislature had violated its own rules, the claim was beyond the authority of the judiciary to decide:

. . . [E]xcept in extraordinary circumstances, as where the rights of persons who are not members of the Legislature are involved, it is not the function of the judiciary to require that the legislature follow its own rules. Indeed, we can think of few actions which would be more intrusive into the legislative process than for a court to function as a sort of super parliamentarian to decide the varied and often obscure points of parliamentary law which may be made in the course of a legislative day. Thus, even though the Uniform Rules' requirements with respect to subject matter notice may have been violated, such violation is solely the business of the Legislature and does not give rise to a justiciable claim.

Malone, 650 P.2d at 359.

constitutional strictures, any deliberative assembly is the final arbiter of its own internal procedures"). This Court must be cautious to guard against becoming a court of appeals for every procedural dispute occurring in the Legislature.

Also of significance in this case is the need to attribute finality to the actions taken by the legislature. On January 22, 1992, the Nineteenth Legislature convened a session of the Legislature. Eight members of that group, a quorum, passed two Bills and two Resolutions. The Revised Organic Act of 1954 demands the following legislative procedure:

> (a) The quorum of the legislature shall consist of eight of its members. No Bill shall become a law unless it shall have been passed at a meeting, at which a quorum was present, by the affirmative vote of a majority of the members present and voting, which vote shall be by yeas and nays.

> (b) The enacting clause of all acts shall be as follows: "Be it enacted by the Legislature of the Virgin Islands".

Revised Organic Act of 1954, § 9(a) and (b).

■ The Bills and Resolutions passed by the "new majority" conformed to the above requirements. Therefore, the courts have no grounds for involvement in this matter. Respect for the doctrine of separation of powers requires that this Court not pass upon political decisions made by the legislature when they are constitutionally acceptable.

A different question would have presented itself had the Legislature violated the Constitution, the Revised Organic Act, or some other external law in its actions on January 22, 1992. Appellees urge that this, in fact, is the situation, and assert that the rules of the Nineteenth Legislature are mandated by Article IV of the U.S. Constitution, Congress and the Revised Organic Act and that the rules have therefore been elevated to constitutional stature. Under this theory, appellees claim that appellants' conduct was violative of the U.S. Constitution and the Revised Organic Act and it is therefore this Court's duty and obligation to resolve the instant dispute.

To support their contention that a constitutional violation has occurred, and that this Court may thus properly pass on appellants' actions, appellees rely on state cases which hold that rules of a state legislature which are mandated by the state constitution must be scrupulously adhered to and cannot be ignored. The cases appellees rely on, however, are inapposite.

In Anderson v. Grossenbacher, 381 S.W.2d 72 (Tex. Ct. App. 1964), the Chairman of the County Home Rule Charter Drafting Commission (of Bexar County, Texas) filed suit seeking a writ of mandamus to compel the County Commission to call an election on a proposed County Home Rule Charter. The Anderson Court refused to compel the County Commissioners to call an election on a proposed County Home Rule Charter because the Drafting Charter Commission failed to comply with a condition precedent which Art. 1606a made a necessary predicate for the call. (Tex. Rev. Civ. Stat. Ann. art. 1606a, is the County Home Rule Statute). The court noted, "We are not dealing with legislative rules made by the legislative body itself. A legislative body may waive, modify or disregard its own rules. . . . We are instead dealing with statutory procedures under which the legislative body must proceed and which it is not free to ignore." Anderson, 381 S.W.2d at 74. Under those circumstances, the court held that the legislative body was not free to disregard the statutory requirements.

■ The situation with which this Court is confronted differs greatly from that in Anderson. In the instant case, the only rules that appellants violated were their own internal rules; therefore appellants' acts were not in violation of the Revised Organic Act or the U.S. Constitution.

Appellees' reliance on Rock v. Thompson, 426 N.E.2d 891 (Ill. 1981), is also misplaced. In Rock, the mandamus petition filed by the movants alleged that the state Senate took action without a quorum present as required by article IV, Section 6(a), of the 1970 State Constitution. In that case, the movants alleged a substantive constitutional defect. When the court held that it had jurisdiction to hear the case, it noted that, "[i]t is the duty of the judiciary to construe the constitution and determine whether its provisions have been disregarded by the actions of any of the branches of government." Rock, 426 N.E.2d at 896.

In the instant case, appellees do no more than allege that the Legislature's rules are congressionally mandated and that disregarding them thus constitutes a constitutional violation. Unlike the moving parties in Anderson and Rock, the appellee Senators cannot point to a single constitutional provision or Revised Organic Act citation to support their contention that the Legislature's rules are Congressionally mandated and must therefore be strictly observed to avoid running afoul of the Constitution or the Revised

184

Organic Act. A mere statement that the internal legislative rules are Congressionally mandated does not make them so.

■ Section 6(g) specifically grants to the Virgin Islands Legislature the power of self-governance. Implicit in the Legislature's grant of authority is the power to make and change its internal rules of procedure.[12] The only limitation Section 6(g) places on the Legislature is that it not act in a manner inconsistent with the Revised Organic Act. Appellants' decision to substitute the simple majority rule for the super-majority rule previously required to waive or amend an internal procedural rule is not clearly inconsistent with any provision of the Revised Organic Act. Section 6(g) does not require a two-thirds majority vote for the valid amendment or waiver of an internal procedural rule. As the Third Circuit Court of Appeals commented in a similar case involving warring factions of the Virgin Islands' Legislature,

> The premise of [the appellant's] argument confuses the internal rules adopted by the legislature to govern its day-to-day affairs with constitutional and statutory law and would result in judicial interference in the legislature's conduct of its own internal affairs. Absent express constitutional command, we believe the judiciary should be wary of such action. (citations omitted).

Mapp v. Lawaetz, 882 F.2d 49, 55 (3d Cir. 1989).

In addressing whether the Territorial Court can interfere with the majority's interpretation of its own rules, this Court ventures into territory that it has covered before. See Mapp et al. v. Lawaetz, et al., Civil No. 89/217 (D.V.I. App. Div. July 14, 1989), affirmed, Mapp v. Lawaetz, 882 F.2d 49 (3d Cir. 1989); Dennis v. Roebuck, 20 V.I. 218 (D.V.I. 1983). In Mapp, the Virgin Islands legislature voted nine to six to remove Kenneth Mapp, an elected Senator, from office. Thereafter, the six dissenting Senators obtained a court order reinstating Mapp. The basis of the order was the Territorial Court's conclusion that Mapp's expulsion under rule 813 of the Legislature's internal rules required a two-thirds vote as opposed to a simple majority vote. The Territorial Court found that the Legislature was required to apply internal rule 813's super-majority vote,

---

[12] Appellees concede that the Revised Organic Act is silent as to the procedure for amending the procedural rules of the legislature. Supp. to Pl.'s Motion for a Temporary Restraining Order at 13.

rather than rule 713's majority vote before they could expel a member. Holding that the dispute was a non-justiciable political question, this Court reversed and remanded with instructions to dismiss appellee's complaint.

Similarly, in Dennis v. Roebuck, supra, this Court recognized that the Legislature is the sole judge of whether it acted properly in applying and interpreting its own rules. In Dennis, a newly-emerging majority amended a Resolution honoring the musical accomplishments of Bobby Richards by adding language replacing the officers, committee chairpersons, and committee members of the Fifteenth Legislature. This amendment was non-germane, and in apparent violation of Senate rule 613. The Senate president ruled that the amendment was non-germane but he was overruled by a majority of Senators who passed the measure. Thereafter, a group of dissenting Senators argued before this Court that the violation of rule 613 constituted a suspension or repeal of an internal rule and thus required a two-thirds super-majority vote. Refusing to disturb a Legislative decision, this Court found that the Legislature's action was simply an "interpretation" of one of its own internal rules. The Dennis decision must be regarded as an affirmation of the principle that courts will not set aside legislative action on the basis that the legislature violated its own self-imposed rules.

In the instant case, as in Mapp and Dennis, appellees have failed to demonstrate how the challenged legislative action violates any externally imposed body of law. The rules appellants purportedly violated were merely internal rules and as such the rules could be repealed, amended or disregarded by the legislature which enacted them. See Manigault v. Springs, 199 U.S. 473, 487 (1905).

C. *The Two-Thirds Rule Has Not Been "Incorporated" Into the Revised Organic Act*

■ Appellees argue that although the Revised Organic Act may not explicitly require a two-thirds vote to amend, this requirement has nevertheless become incorporated into the Revised Organic Act under Section 6(g) as a result of its almost continuous adoption by successive legislatures. See Appellees' Br. at 27–28. The argument that the two-thirds rule has, because of its longevity, become a part of the Revised Organic Act fails under the language of the Act itself. Section 6(g) explicitly provides that the rules in force at the time of the adoption of the Revised Organic Act were to remain

in force "until altered, amended or repealed by the legislature." See Revised Organic Act of 1954 § 6. The Revised Organic Act anticipates and provides for the legislators to alter their own rules; there is simply no basis for the argument that Section 6(g) incorporates into constitutional or congressional law those rules that are of long-standing duration. As appellants note in their reply brief, the appellees' position contradicts the holding of the United States Supreme Court in United States v. Ballin, 144 U.S. 1 (1892):

> It is no objection to the validity of a rule that a different one has been prescribed and enforced for a length of time. The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the House, and within the limitations suggested, absolute and beyond the challenge of any other body or tribunal.

Ballin, 144 U.S. at 5.

A practice is not elevated to a constitutional requirement by virtue of its long-standing or widespread use. Neither the United States Constitution nor the Revised Organic Act specify rules by which the Virgin Islands Legislature should govern itself. Thus, appellees have failed to demonstrate a constitutional or Revised Organic Act violation which would warrant judicial interference in this matter.

Appellees rely on the fact that Congress enacted the Revised Organic Act and that the Act provides for legislative rules to support their argument that both the Revised Organic Act and the U.S. Constitution have been violated. As noted above, Section 6(g) expressly authorizes legislative self-governance. In this case, after establishing a quorum, a majority of the Legislature of the Virgin Islands voted to amend the rules by which they govern their internal procedures. Section 6(g) expressly provides for just such changes. While the original rules adopted at the inception of the term of the Nineteenth Legislature provided for a two-thirds vote before a rule could be waived or amended, nothing in the U.S. Constitution or the Revised Organic Act imposes a super-majority requirement before a rule can be amended or repealed. That being the case, it cannot credibly be argued that by substituting a simple

majority requirement for the two-thirds requirement the appellants violated either the Constitution or the Revised Organic Act.[13]

D. *The Two-Thirds Rule Was Not Intended To Be Enshrined In the Revised Organic Act*

■ During oral argument, appellees' counsel advanced an argument that certain passages of the legislative history of the Revised Organic Act of 1954 support appellees' theory that Congress intended to incorporate the then existing rules of the Legislature into the Revised Organic Act.[14] Appellees' counsel cited two passages, one on page 10281, and one on page 8663, which purportedly evidence a Congressional intent to incorporate specific procedural rules into the Revised Organic Act.[15] After reviewing these passages, and the legislative history as a whole, the court is convinced that the cited passages do not support the appellees' position.

The passage on page 10281 simply states, in the relevant part, that Section 6(g) of the Revised Organic Act "sets forth certain legislative powers." The legislative history does not go on to enumerate or comment on the powers being conferred. The Court cannot in good conscience interpret this passage as evidencing an intent to give certain procedural rules the force of law. While counsel's assertion that Representative Saylor's comments found on page 8663 evidence an intent to limit the power of the legislature, the Court

---

[13] In State v. Sitka, 527 A.2d 265 (Conn. App. Ct. 1987) a similar argument was rejected by the court. In Sitka, the defendant argued that the Connecticut constitution required a two-thirds majority vote before any internal rules could be suspended. Basically, the defendant argued that since the constitution empowered each house to determine its rules of proceeding, those rules were therefore constitutionally mandated and as such a departure from those rules required judicial scrutiny. The court found, however, that the constitution did not require any particular rules or any particular method for suspending the rules and that "labelling this a constitutional question does not make it so." Id. at 267. The court noted that since the legislature was empowered to establish their own rules, it was also free to depart from said rules. Id. at 268.

[14] Before oral argument began, appellees' counsel received permission to file an addendum (hereinafter Legislative Addendum III) setting forth the legislative history of the Revised Organic Act of 1954. After receiving permission to file the addendum, counsel directed the court's attention to 100 Cong. Rec. 8663–65 (1954) (House debate over Revision of the Revised Organic Act of the Virgin Islands).

[15] See H.R. Rep., No. 2105, 83rd Cong., 2nd Sess. 10281 (1954).

cannot find any evidence of an intent to limit the power of the majority of the legislature to promulgate its own internal rules. Were this a case involving limitations which Representative Saylor explicitly stated were stipulated in the Revised Organic Act such as the districts from which Senators could be elected, or the number of days the legislature could be in session, or the salary a Senator could draw, the passage would be relevant. Since this is not such a case, the Court cannot perceive any way in which Representative Saylor's comments are relevant.

In fact, the legislative history undercuts the appellees' argument that Congress intended to give the existing rules the force of law. Representative Powell began his remarks by stating that "any act which bears the date of 1936 is in need of revision. The world has moved with such startling rapidity during the past 18 years that anything that old is outmoded by now."[16] It seems incredible that Representatives who were interested in modernizing the government of the Virgin Islands, and who were obviously concerned with how the legislature had been operating,[17] would carve the then existing rules of the legislature into stone.

Even if Congress had intended to incorporate the existing procedural rules into the Revised Organic Act, the appellees would still be unable to prevail on their claim. As counsel for the appellants pointed out in his argument, under the 1936 Organic Act, the legislature (which was composed of sixteen Senators) could act only when two-thirds of the members *then present* agreed. Since a quorum was fixed at ten Senators, seven Senators (two-thirds of the minimum needed for a quorum) could speak for the entire sixteen member legislature.[18] This requirement of the 1936 Organic Act cannot stand for the proposition that the consent of two-thirds of the entire legislature must agree in order to change the rules.

Further, the Court notes that, when Congress was revising the 1954 Organic Act it never altered the language to specifically require two-thirds of the Senators to approve any changes in the legislative rules. Nor did Congress add such a requirement when it

---

[16] See Legislative Addendum III at 8664.

[17] See Legislative Addendum III at 10264, "Politically, the conferees' bill would modernize and streamline the present archaic local governmental structure in the Virgin Islands. Thus, by providing better government, it provides more true local self-government."

[18] See Legislative Addendum III at 32.

amended the Revised Organic Act in 1974 and again in 1980. The fact that Congress specifically provided for a two-thirds vote in other sections of the Revised Organic Act leads the Court to believe that Congress' failure to include a specific provision requiring a super-majority vote to amend the legislature's internal rules was not an oversight. See Revised Organic Act at § 9(d) (providing for a two-thirds vote to override the governor's veto); Id. at § 12(c)(2) (requiring a two-thirds vote to initiate a recall election).

### E. *The Equal Protection Clause Is Not Violated*

At oral argument, Appellees developed the claim raised summarily in their brief that the actions of the new majority constitute a violation of their equal protection rights. Essentially, Appellees argued that if this Court were to reverse the lower court and let the challenged actions of the new majority stand, their power and influence in the legislature would be diluted, and thus indirectly dilute the political rights of the voters who elected them to office. Appellees could not articulate for this panel what provision of the one man one vote equal protection rule was violated. Like the Ninth Circuit in Davids v. Akers, 549 F.2d 120, 124 (9th Cir. 1977), which held that a federal court could not order the Arizona House of Representatives to alter its internal rules of order, "[w]e think that these propositions are non sequiturs."

The only language in the Constitution that arguably supports this claim is found in Fourteenth Amendment and states in relevant part: "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the law." Even in the Virgin Islands, the principle, that "[i]n theory at least, and very often in fact, each candidate elected represents all of the people of his [or her] district—those who voted for him [or her], those who voted against him [or her], those who chose not to vote, those who were not eligible to vote," holds true. See Davids, 549 F.2d at 124. To again quote the Ninth Circuit:

> It is nonsense to say that every member who ran on the democratic ticket represents only democrats. Moreover, to try to extend the one man one vote rule to party representation on committees is totally to disregard the rights of voters for losing candidates.

Id. This is more true in the Virgin Islands with its unicameral legislative body. We feel no need to engage in as extensive a discussion

190

of this notion of representation as the Ninth Circuit. However, we are in accord with that court that the Appellees' argument asks us to "impose upon the Equal Protection Clause a meaning it will not bear, a burden it cannot carry." Id. at 125. Accord, Vander Jagt v. O'Neill, 699 F.2d 1166 (D.C. Cir.), cert. denied, 464 U.S. 823 (1983) (neither federal courts nor the executive branch can tell Congress what rules to adopt as long as it does not exceed its Article I powers).

## III. CONCLUSION

This Court's analysis must begin and end with an examination of whether the appellants, the majority members of a co-equal branch of government, violated the federal Constitution, the Revised Organic Act, or some other external law, thus creating the need for the intervention of the judiciary. We conclude that they have not. Appellants' actions are in solid accord with the basic principle of democratic government; namely, the principle of majority rule. The opinion issued by the Territorial Court cannot stand because it acts to place the court in the role of super-parliamentarian, violating the doctrine of separation of powers and involving the court in a nonjusticiable controversy. The questions arising from this case involve matters occurring within the contours of the legislative process. The legislative decisions at issue here—the composition and leadership of the Legislature's committees, among other things, lie at the heart of the legislative function. In sum, this case presents political questions and not justiciable issues and thus the doctrine of separation of powers precludes the judiciary from exercising its jurisdiction.

This Court also holds that relief is denied based on the court's traditional discretion to grant or withhold equitable relief. In this case, concerns regarding separation of powers counsel this Court to avoid becoming embroiled in the affairs of a coordinate branch of government. See Vander Jagt v. O'Neill, 699 F.2d 1166 (1983); see also Abood v. Gorsuch, 703 P.2d 1158 (Alaska 1985).

Accordingly, the Court will enter the attached order.

## ORDER OF THE COURT

AND NOW, this 19th day of March, 1992, the Court having considered the written submissions and oral arguments of the parties; and

For the reasons set forth in the accompanying opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's decision is REVERSED; and

THAT the complaint is DISMISSED with prejudice; and

THAT Bills 19-2001 and 19-2002, which are Resolutions passed by the 19th Legislature of the Virgin Islands on January 22, 1992, are to be returned to the Archives as validly enacted Resolutions; and

THAT Bill 19-2003, passed by the 19th Legislature on January 22, 1992, and signed by the Governor on February 7, 1992, is hereby determined to be validly enacted legislation; and

THAT Bill 19-2004, passed by the 19th Legislature on January 22, 1992, but vetoed by the Governor on February 7, 1992, is to be returned to the Legislature.